In re BURSTEIN.

(District Court, D. Connecticut. May 4, 1908.)

No. 1,817.

BANKRUPTCY—RIGHT TO DISCHARGE—EVIDENCE CONSIDERED.

Evidence considered, and *held* insufficient to warrant the denial of a bankrupt's discharge on the ground of concealment of assets, or failure to keep books with intent to conceal his true financial condition.

In Bankruptcy. On application for discharge.

The following is the report of Special Master Henry G. Newton upon petition for discharge:

I, Henry G. Newton, referee in bankruptcy for the New Haven county district of the district of Connecticut, to whom the above-entitled case was referred as special master, do hereby certify:

That the above-named Jacob Burstein, of Wallingford, Conn., was duly adjudicated a bankrupt herein on June 19, 1907; that on October 24, 1907, the petition of the bankrupt for a discharge from all his debts in bankruptcy was duly filed with the clerk of said court, and was duly referred to me by said court for further proceedings; that on October 29, 1907, I fixed the 8th day of March, 1908, at 3 p. m., at my office, Room 9, No. 818 Chapel street, New Haven, Conn., as the time and place for a hearing on said petition for discharge, for examining the bankrupt, and for showing cause, if any, why such discharge should not be granted; and on October 29, 1907, I gave due notice thereof to all creditors whose names appear upon the schedules of the bankrupt, to all attorneys who appear in the case, and to all persons interested, by mailing and publishing, as appears by my certificate with copy of notice hereto annexed. Henry Horton, one of the principal creditors, appeared to object and filed in due time his specifications. The bankrupt thereupon filed his motion to dismiss the specifications, which was declined by the special master. A copy of the specifications, motion, and decision of master are hereto annexed. The matter was then heard on the facts, and the referee finds and recommends as follows:

Bankrupt signed and filed his petition June 19, 1907. He was engaged in the business of selling bicycle and automobile goods and making repairs. Between January 1, 1907, and said June 19, 1907, he bought goods to the

amount of nearly $1,750. Of· the goods so bought, he had on hand at the time of bankruptcy not more than $300 worth, estimated at cost. All the others had been disposed of at a profit, and all were paid for, except about $36.50 then due. There were no losses from bad debts. I estimate that the $1,450 worth of goods, being the $1,750 bought, less $300 on hand, with the work on repairs which would go with them, brought in somewhere between $1,850 and $2,200. The bankrupt accounts for this somewhat as appears by his bill of items hereto annexed. Of these items, less than $225 was paid for goods; and $415 is claimed to have been paid for loans. ˙The bill of items appears to be correct, except the items of $100 for baby clothes, which I do not think should have amounted to $25; the $264 for living expenses, which I think is too high; and the $66 for incidental expenses, as to which I have no means of estimating. Deducting, however, from the $1,930.43 appearing on the bill of items, $75 for baby clothes and $125 for household and incidental expenses, making $200, would leave $1,730.43. And, while this is less than the amount probably received from the $1,450 worth of goods. I do not think that the evidence, aside from the failure to keep books, is so clear as to concealment as the cases on that subject require, and cannot recommend that the discharge be denied, unless, with the uncertainty, the failure to keep books under the·circumstances detailed justifies such denial.

The specification as to keeping books is: "(4) Said bankrupt, with the intent to conceal his true financial condition, has destroyed, concealed, and failed to keep books of account or records from which such condition might be ascertained, and has destroyed and concealed any and all records showing his financial condition." As to whether this allegation is sufficient, I cite, in addition to the authorities contained in the memorandum of decisions upon the motion to dismiss, the following: In Re Patterson, 10 Am. Bankr. Rep. 371, 373, 374, 121 Fed. 921 (Northern district of New York, Judge Ray), allegation approved. Godshalk Co. v. Sterling (United States Circuit Court of Appeals, Third Circuit) 12 Am. Bankr. Rep. 302, 129 Fed. 580, 64 C. C. A. 148, specification that "said bankrupts did, with intent to conceal their financial condition, fail to keep books of account or records from which such condition might be ascertained." On page 303 of 12 Am. Bankr. Rep., page 582 of 129 Fed., page 150 of 64 C. C. A., the court says: "We cannot assent to the suggestion that it was the duty of the objecting creditor to specify what books of account the bankrupts should have kept. We think the specification went far enough when it affirmed that the bankrupts, with intent to conceal their financial condition, failed to keep books of account or records from which condition might be ascertained." In Milgraum v. Ost, 12 Am. Bankr. Rep. 306, 129 Fed. 827, a specification that "said bankrupts have, with intent to conceal their financial condition, destroyed, concealed, or failed to keep books of account or records from which such condition might be ascertained," was held insufficient; Judge McPherson saying that this has been so often decided to be bad that nothing more need be said upon the subject." In re Ginsburg, 12 Am. Bankr. Rep. 459, 130 Fed. 627, Judge Holland (Eastern district of Pennsylvania) holds that a specification that "bankrupt failed to keep books of account or records from which his true condition might be ascertained" was sufficient. In Re Garrison (U. S. C. C. A., Second Circuit) 149 Fed. 178, 79 C. C. A. 126, Judge Cox delivering the opinion, the allegation is that the "bankrupt failed to keep any books of account, records, or papers from which his true financial condition or interest in said business might be ascertained." There appears to have been no question as to the sufficiency of this allegation.

In the present case no books of account from which the financial condition could be ascertained were kept. The only book presented is the bank pass book, in which account $700 were deposited during the time in question. Beside his books, a quantity of checks and receipts were produced. No evidence that the failure to keep books was with intent to conceal his financial condition was offered, other than substantially that which would be necessary to prove the foregoing facts. It was claimed upon the hearing by bankrupt's counsel that the bankrupt was a foreigner, ignorant and unable to keep books, and that his bank book and checks and receipts, and the evidence offered, sufficiently showed his financial condition. The bankrupt testified he

had no intent to conceal his financial condition, and gave as his reasons for failing to keep such books that he was ignorant of bookkeeping, never had been accustomed to keep books, and had only a few months' schooling in his lifetime, and could not spell well. He testified that he kept on file his checks, receipts, and unpaid bills; that none of these papers were at any time destroyed or concealed; and that he had turned over to the trustee such papers and bills as had been asked for. Bankrupt had been able to make out accurate schedules of his creditors and the amounts due them in the preparation of his petition in bankruptcy. Bankrupt had been in business only the previous season on his own account, and he testified that during that time he kept his accounts in the same manner, and had settled his former bills, and preserved similar vouchers. During the winter months the bicycle and automobile supply business, in which the bankrupt had engaged, was practically shut down in Wallingford. Aside from the signing of his name to checks, which appear to have been invariably filled out by his wife or some other person, the bankrupt has not been shown to have done any writing. Bankrupt's father-in-law, before bankruptcy, offered to raise the money for a compromise of 35 per cent. if the creditors would have accepted it. The total amount of claims is about $1,525. In Re Alvord, 14 Am. Bankr. Rep. 264, 135 Fed. 236, the specification apparently was "that, with intent to conceal his financial condition from his creditors, he failed to keep books of account or records which would disclose his condition." The court says that the bankrupt, during former services, must have learned the value of accurate bookkeeping, and that he was amply equipped with the knowledge which educated intelligence must possess, and that his conduct was unwise and unwarranted, and that the discharge should be denied.

In the present case it would scarcely seem possible that there could be a more complete failure to keep books of account. Whether the duty imposed upon this petitioner by the bankrupt act would bring the case within that of In re Alvord, the court can best judge. It is a case in which any one, seeing this sale at a profit of goods costing $1,450 and payments of less than $225, must desire that a discharge be denied, if such denial is legal; but it seems to me that on these facts the law and the decisions require that the discharge be granted.

Unless the court should think that the above facts justify a denial, I recommend that a discharge be granted.

O. H. D. Fowler, for petitioner.
Chas. A. Harrison, for opposing creditor.

PLATT, District Judge. This matter has been carefully examined, and I am bound to say that the bankrupt deserves no help. I am sorry for the creditors, and wish they had listened to the offer of settlement. The trouble is that the law and the facts happen in this instance to be of service to an unworthy man. As to concealment of assets, there is nothing more than the veriest guesswork. The proof falls far short of supporting the specifications bearing upon that point. He kept no books; but it is impossible, from the facts set forth, to draw the inference that his failure to keep them was "with the intent to conceal his true financial condition."

With mixed emotions, I am constrained to accept the report of the special master, and in compliance with his recommendation to order that the discharge be granted.